UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL ACTION NO. 1:16-CR-00022-GNS

UNITED STATES OF AMERICA                                                            PLAINTIFF

v.

EDUARDO ROJAS CLARK                                                                 DEFENDANT

### MEMORANDUM OPINION & ORDER

This matter is before the Court upon Defendant's Objection to the Magistrate Judge's Findings of Facts, Conclusions of Law, and Recommendation ("R&R") (DN 41) to Defendant's Motion to Suppress (DN 31). For the reasons outlined below, the Magistrate Judge's Findings of Facts, Conclusions of Law, and Recommendation ("R&R") (DN 40) is **ADOPTED**, and Defendant's Objection is **OVERRULED**.

### I. BACKGROUND

The R&R sets forth the relevant facts in detail. The Court sees no need to recite those facts again and, therefore, incorporates them by reference. (R. & R. 2-6, DN 40).

### II. STANDARD OF REVIEW

In *United States v. Curtis*, 237 F.3d 598 (6th Cir. 2001), the Sixth Circuit articulated the proper standard of review for objections to a ruling or recommendation by a magistrate judge:

> [Section] 636(b) creates two different standards of review for district courts when a magistrate court's finding is challenged in district court. A district court shall apply a "clearly erroneous or contrary to law" standard of review for the "nondispositive" preliminary measures of § 636(b)(1)(A). Conversely, "dispositive motions" excepted from § 636(b)(1)(A), such as motions for summary judgment or *for the suppression of evidence*, are governed by the *de novo* standard.

*Id.* at 603 (emphasis added) (internal citation omitted) (citation omitted). "When a [magistrate judge]'s findings and recommendations rest upon the evaluation of the credibility of a witness, the district court is not required to rehear the testimony in order to conduct a *de novo* determination of the issues." *United States v. Bermudez*, No. 99-6097, 2000 WL 1871676, at *3 (6th Cir. Dec. 11, 2000) (citing *United States v. Raddatz*, 447 U.S. 667, 675-76 (1980)). "Credibility determinations of the magistrate judge who personally listened to the testimony . . . should be accepted unless in [its] de novo review of the record [the district court] finds a reason to question the magistrate judge's assessment." *United States v. Johnson*, No. 10-20176, 2011 WL 3844194, at *2 (W.D. Tenn. Aug. 30, 2011) (internal quotation marks omitted) (citations omitted).

### III. DISCUSSION

In the R&R, the Magistrate Judge recommended the partial grant and the partial denial of Defendant Eduardo Rojas Clark's ("Clark") Motion to Suppress. (R. & R. 23). In particular, the Magistrate Judge recommended suppressing any statement that Clark made to law enforcement during custodial detention after the completion of the traffic stop and prior to the issuance of a *Miranda* warning at the vehicle inspection facility. (R. & R. 16-18). The Magistrate Judge, however, concluded that: (i) there was probable cause for the traffic stop; (ii) the stop was not unconstitutionally extended; (iii) Texas State Trooper Robert Samuel Ben Dollar ("Trooper Dollar") had no obligation to provide a *Miranda* warning relating to the routine questioning while he processed the traffic stop; (iv) Clark consented to the search of the vehicle; and (v) the officers gave Clark a *Miranda* warning at the vehicle inspection facility and any statements made subsequent to that warning are admissible. (R. & R. 7-16, 18-22).

Clark objects to the R&R on the bases that: (i) Trooper Dollar did not have probable cause for the initial traffic stop; (ii) the drugs discovered during the search of the vehicle should be suppressed because of the suppression of the custodial interrogation; and (iii) Clark did not waive his *Miranda* rights at the vehicle inspection facility where the vehicle search occurred.[1] (Def.'s Obj. 2-4). Each basis will be addressed below.

A.     **Initial Traffic Stop**

Clark argues that Trooper Dollar did not have probable cause for the initial traffic stop. (Def.'s Obj. 3). "The Fourth Amendment, applicable to the states through the Fourteenth, generally prohibits unreasonable searches and seizures." *United States v. Hollis*, No. 5:14-70-DCR, 2014 WL 5471033, at *4 (E.D. Ky. Oct. 28, 2014). "'An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth [and Fourteenth] Amendment[s].'" *Id.* (quoting *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008)). An officer may lawfully "stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime" *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012) (citing *Blair*, 524 F.3d at 748). "The probable cause determination requires a common sense, totality of the circumstances assessment of the basis for a seizure or search." *Hollis*, 2014 WL 5471033, at *4. "Probable cause for a traffic stop is 'a reasonable ground for belief, supported by less than prima facie proof but more than mere suspicion.'" *Id.* (quoting *Blair*, 524

---

[1] Clark also states that "[t]he defense continues to assert the arguments set forth in the initial motion to suppress and at the suppression hearing, and incorporates those arguments by reference." (Def.'s Obj. 2). The Court construes that statement as a general objection to the R&R and, as a sister court has aptly noted, "[a] general objection that fails to identify specific factual or legal issues from the Recommendation, however, is not permitted, since it duplicates the [magistrate judge]'s efforts and wastes judicial economy." *United States v. Luke*, No. 6:15-CR-10-GFVT, 2016 WL 7191662, at *2 (E.D. Ky. Dec. 12, 2016) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). Accordingly, the Court will only address in detail the specific issues raised by Defendant.

F.3d at 748). A court must determine whether "'the facts and circumstances within [the officers'] knowledge and of which [they] had reasonably trustworthy information [are] sufficient to warrant a man of reasonable caution in the belief that' an offense has been or is being committed.'" *Id.* (quoting *United States v. Hughes*, 606 F.3d 311, 320 (6th Cir. 2010)). "Importantly, the probable cause standard is objective. 'Subjective intentions play no role in probable cause Fourth Amendment analysis.'" *Id.* (quoting *Schneider v. Franklin Cty.*, 288 F. App'x 247, 251 (6th Cir. 2008)).

Clark maintains that Trooper Dollar misconstrued the Texas law—Section 545.157 of the Texas Transportation Code—upon which the stop was based, and as a result, the officer lacked probable cause for the traffic stop.[2] (Def.'s Obj. 3). In making this argument, Clark cites to Trooper Dollar's testimony early in the suppression hearing. (Def.'s Obj. 3 (quoting Suppression Hr'g Tr. 6:18-7:5, DN 38)). To the extent that there was any issue with Trooper Dollar's understanding or explanation of the statute, it was clarified during cross-examination. In response to a question posed by Clark's counsel, Trooper Dollar testified as follows:

---

[2] This statute requires vehicles to slow down or move away from, *inter alia*, "a stationary authorized emergency vehicle using visual signals . . . ." Tex. Transp. Code § 545.157(a)(1). In relevant part, the statute provides:

> On approaching a vehicle described by Subsection (a), an operator, unless otherwise directed by a police officer, shall:
> (1) vacate the lane closest to the vehicle when driving on a highway with two or more lanes traveling in the direction
> of the vehicle; or
> (2) slow to a speed not to exceed:
> (A) 20 miles per hour less than the posted speed limit when the posted speed limit is 25 miles per hour or more; or
> (B) five miles per hour when the posted speed limit is less than 25 miles per hour.

*Id.* § 545.157(b).

4

> Q. So the blue car there is supposed to be in the left-hand lane as it goes past your car; is that it?
> A. Yes, sir, or slowed 20 below the posted limit.

(Suppression Hr'g Tr. 26:24-27:1). In a subsequent colloquy, Trooper Dollar stated:

> Q. Now, the statute that we are talking about here is—I think you talked about it. You have two choices. You can either—it says, "On approaching a vehicle described in Subsection (a)"—which we will all agree is your car or your vehicle—you should "(1) vacate the lane closest to the vehicle," which would be the right-hand lane. You were able to observe that?
> A. Yes, sir. He did not vacate it.
> Q. We saw two wheels barely into the right lane?
> A. That's your words. Yes, sir. It was in the right lane. He did not vacate it.
> Q. Okay. The other choice is to slow down 20 miles under the posted speed limit. What is the speed limit on that stretch of interstate?
> A. It's 75 miles per hour.
> Q. Okay. So he would need to have slowed down to 55 miles per hour?
> A. I would agree with that, yes, sir.

(Suppression Hr'g Tr. 30:19-31:11). As to the speed of Clark's vehicle at the time he passed the law enforcement vehicle, Trooper Dollar further testified:

> Q. And when you saw Mr. Rojas Clark pass you on the highway on May 23rd, 2016, was it your opinion at that time that he was driving faster than 55 miles per hour, which would be 20 miles below the speed limit?
> A. Yes, sir, definitely. That's what caught my eye. First and foremost, he did not vacate the lane, and then second, if he wasn't able to because of the traffic, which was not the case, then I visually could tell that he was way—not within the 20 miles per hour variance that you are supposed to come down to 55.

(Suppression Hr'g Tr. 44:14-23). As a result, Clark's selective citation to the hearing does not undermine Trooper Dollar's observation of Clark's vehicle or Trooper Dollar's understanding of a motorist's duty under Texas law.

As Trooper Dollar testified, he personally observed Clark fail to comply with the requirements of Section 545.157 of the Texas Transportation Code, which is sufficient to provide probable cause for the stop. *See Whren v. United States*, 517 U.S. 806, 817-18 (1996) (""[T]he foremost method of enforcing traffic and vehicle safety regulations . . . is acting upon observed

5

violations, which afford the quantum of individualized suspicion necessary to ensure that police discretion is sufficiently constrained." (internal quotation marks omitted) (internal citation omitted) (quoting *Delaware v. Prouse*, 440 U.S. 648, 654-55 (1979))). Thus, Trooper Dollar's observation of a traffic violation provided probable cause for the traffic stop. Accordingly, the Magistrate Judge did not err in concluding that the stop was valid, and Clark's objection will be overruled on this basis.

B. **Custodial Questioning After Completion of Traffic Stop**

Clark also objects to the questioning by Trooper Dollar that occurred after the completion of the traffic stop. (Def.'s Obj. 2-3). Clark maintains that the questioning directly led to the discovery of the contraband in his car, which warrants the suppression of such evidence at trial.[3] (Def. Obj. 2).

In general, "[w]arrantless searches violate the Fourth Amendment's guarantee against unreasonable searches and seizures, with 'only a few specifically established and well-delineated exceptions.'" *United States v. Smith*, 549 F.3d 355, 359 (6th Cir. 2008) (quoting *Katz v. United States,* 389 U.S. 347, 357 (1967)). An exception to this rule is the so-called automobile exception. *See California v. Carney*, 471 U.S. 386, 390 (1985). As the Supreme Court noted, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam) (citing *Carney*, 471 U.S. at 393). In evaluating the validity of a warrantless search of an automobile, a court is to apply a common sense look at

---

[3] In the R&R, the Magistrate Judge specifically considered this line of questioning and the evidence presented during the hearing. The Magistrate Judge concluded that Clark gave his free and voluntary consent to search the car despite the officer's failure to give the *Miranda* warning. (R. & R. 18-19). In objecting to the admissibility of the evidence based on Clark's consent, however, Clark does not argue that the consent was obtained by coercion or threat.

the totality of the circumstances behind the search. *See, e.g.*, *United States v. Smith*, 510 F.3d 641, 647-48 (6th Cir. 2007). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998) (internal quotation marks omitted) (quoting *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998)). "If probable cause justifies a search of a vehicle which has been lawfully stopped, then that probable cause extends to justify the search of every part of the vehicle and all containers found therein in which contraband could be hidden." *United States v. Crotinger*, 928 F.2d 203, 205 (6th Cir. 1991) (citing *United States v. Ross*, 456 U.S. 798, 825 (1982)).

Trooper Dollar's testimony reflects that he had probable cause even before the custodial questioning and Clark's consent to the search.[4] When Trooper Dollar first approached the vehicle, he noticed that it reflected signs of hard travel as evidenced by fast food, open energy drinks, and refuse in the vehicle. (Suppression Hr'g Tr. 9:1-4). When Clark retrieved the vehicle registration and proof of insurance paperwork from the glove compartment, Trooper

---

[4] During the hearing, Trooper Dollar addressed how he would have handled the situation if Clark had withheld consent to the search:

> Q. What would have happened if he would have said "no" when you asked for consent to search his car?
> A. I would have called for a K-9, sir.
> Q. Did you believe at that point that you had a reasonable suspicion there might be narcotics in that car?
> A. Absolutely.
> Q. All right. Why did you have that belief?
> A. Due to my training and experience and the many cars I have talked about stopping over and over, I mean, you take the totality of the circumstances, all the criminal indicators we have talked about today, you put that all together, and this one is pretty well textbook what we see when we have a cross-country smuggler.

(Suppression Hr'g Tr. 16:18-17:5).

7

Dollar noticed that it was empty except for those items, which is atypical of most vehicles. (Suppression Hr'g Tr. 9:5-10). Trooper Dollar also noticed that the vehicle had brand new tires, which he testified are common on vehicles used in drug trafficking. (Suppression Hr'g Tr. 9:11-15).

In addition, Trooper Dollar's interaction with Clark during the traffic stop further heightened the belief that Clark was involved in some illegal activity. Clark maintained that he was en route to a job opportunity in Kentucky, but he was unable to identify the location. (Suppression Hr'g Tr. 11:14-21). Clark stated that the vehicle was owned by his stepfather, but he was unable to provide his stepfather's last name. (Suppression Hr'g Tr. 11:8-13). Trooper Dollar also observed Clark's continued and increasing nervousness, sweating, and erratic breathing patterns. (Suppression Hr'g Tr. 12:17-22). Trooper Dollar also discovered that there was an active alert on this vehicle from the Federal Bureau of Investigation, which noted that "it's been actively used in the smuggling of crystal methamphetamine." (Suppression Hr'g Tr. 13:14-14:1). That revelation appeared to confirm Trooper Dollar's suspicion that Clark was engaged in criminal activity.

Considering the totality of the facts and circumstances, the Court finds that Trooper Dollar had probable cause to believe that Clark was involved in trafficking drugs. Therefore, warrantless search of the automobile was valid, and Clark's objection is overruled.

### C. **Waiver of *Miranda* Rights**

Finally, Clark argues that the Magistrate Judge erred in concluding that he had waived his *Miranda* rights during his questioning at the vehicle inspection facility. (Def.'s Obj. 4). In evaluating a potential waiver of such rights, the Sixth Circuit has instructed:

> "The waiver must have been made with full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only

> if the 'totality of the circumstances surrounding the investigation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." In [assessing] whether a waiver is knowing and intelligent, "the relevant question is not whether the 'criminal suspect [knew] and [understood] every possible consequence of a waiver of the Fifth Amendment privilege,' but rather whether the 'suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking any time.'"
>
> This Court has held that a *Miranda* "waiver may be clearly inferred . . . when a defendant, after being properly informed of his rights and indicating that he understands them, nevertheless does nothing to invoke those rights" and speaks. Thus, a waiver of *Miranda* rights need not be made in writing, and need not be expressly made. Rather, courts may infer an implied waiver "from the actions or words of the person interrogated."

*United States v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009) (alterations in original) (internal citations omitted) (citation omitted).

The evidence presented during the evidentiary hearing reflects that Special Agent Shane Reese ("Special Agent Reese") of the Drug Enforcement Administration read the full *Miranda* warning to Clark in the presence of Agent Tommy Jason Lindley ("Agent Lindley") of the Texas Department of Public Safety. (Suppression Hr'g Tr. 47:12-17, 58:8-12, 62:5-12). At the hearing, Agent Lindley could not recall whether Special Agent inquired whether Clark understood the *Miranda* warning. (Suppression Hr'g Tr. 62:24-63:2). Special Agent Reese, however, testified that the questioning would not have continued if Clark did not acknowledge understanding those rights. (Suppression Hr'g Tr. 48:9-11).

While there is no evidence that Clark expressly waived his *Miranda* rights, such a waiver is not required as noted by the Magistrate Judge. As discussed above, a defendant's actions or words can constitute an implied waiver. *See Adams*, 583 F.3d at 467. In this case, Clark's cooperation and willingness to answer the officers' questions reflects an implied waiver of his

*Miranda* rights. Thus, the Magistrate Judge did not err in finding that Clark had consented to the search of his vehicle.

After considering the evidence presented at the hearing and the arguments of the parties, the Magistrate Judge properly concluded that Defendant's motion should be granted in part and denied in part. Clark's objection will be overruled in its entirety.

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Objection (DN 41) is **OVERRULED**, and the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 40) is **ACCEPTED AND ADOPTED IN ITS ENTIRETY**. Defendant's Motion to Suppress Evidence (DN 31) is **GRANTED IN PART** and **DENIED IN PART**. Any statements made by Defendant between the time Trooper Dollar issued the warning citation and when Defendant received the *Miranda* warning at the vehicle inspection facility are suppressed and shall not be admissible at trial of this action.

**Greg N. Stivers, Judge**
**United States District Court**
August 14, 2017

cc: counsel of record